UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

FRANCIS AUSTIN,

        Plaintiff

   v.

FORDHAM UNIVERSITY,

        Defendant.

--------------------------------------------------------X

Civ. No. 23-cv-4696

COMPLAINT &
JURY DEMAND

Plaintiff Francis Austin ("Plaintiff" or "Austin"), by and through his attorneys, Peters Brovner LLP for his Complaint alleges as follows:

## PRELIMINARY STATEMENT

1. On February 11, 2011, Francis Austin, while a student at Defendant Fordham University ("Defendant" or "Fordham"), was raped by his roommate, Patrick Sweeney, in their Fordham dormitory. The following year, Austin was again violently sexually assaulted by Sweeney.

2. Both the rape and the subsequent sexual assault were entirely predictable and preventable, and Fordham was on notice, including written notice, of the danger that Sweeney posed to Austin. Nevertheless, Fordham recklessly chose to ignore these warnings, even refusing to investigate the rape after Austin informed faculty members about it, which paved the way for the second sexual assault.

3. Fordham, failed to investigate repeated, credible, threats of assault and rape by Sweeney. That failure led to Austin being raped on Fordham's property, in a Fordham program, at a time and place where Fordham promised Austin adequate security.

4. Fordham then failed to investigate the rape which directly and predictable led to Austin being re-sexually assaulted on Fordham's property, in a Fordham supervised program and at a time when Fordham promised Austin adequate security.

5. Fordham repeatedly betrayed a young student, placing him in harm's way and then failing to protect him from a known dangerous situation of its own making. Upon information and belief, this was not the first time that Fordham engaged in such behavior but rather had a culture of ignoring sexual assaults to protect its reputation. According to emails from a former faculty member, this is a moral failing that plagued the school for years.

6. Fordham's culpability for Austin's rape and a subsequent sexual assault, includes: (1) Assigning Austin to live with Sweeney despite knowing that Sweeney had a history of violent assaults against other students; (2) Failing to reassign Austin to a live with a different roommate after Austin repeatedly requested a reassignment, both orally and in writing, and included in those requests the known dangers posed by Sweeney including Sweeney's physical assaults on Austin, his express threat to rape Austin and his bragging about raping other students; and (3) failing to take action against Sweeney even after Mr. Austin reported the rape to multiple Fordham staff, leaving Sweeney free to again violently sexually assault Austin on campus the following year.

7. As the property owner of the campus grounds on which both the rape and the subsequent sexual assault took place, Fordham had an obligation to protect Austin from the known danger that Sweeney presented. As manager of the dormitory housing program – a school activity in which Austin was required to participate – Fordham further had an obligation to keep the program safe from the known danger that Sweeney presented. Finally, Fordham conspicuously posted security guards in the various dormitories including the one that

Austin lived in, thus indicating that Fordham would take steps to keep students safe in those dormitories. However, despite these guards hearing Sweeney repeatedly threaten to rape Austin, Fordham failed to prevent Sweeney's rape of Austin and thus violated its promise of safety.

8. As a result of Defendant's actions, Austin's life has been irreparably damaged and he has suffered and continues to suffer from severe mental anguish, and emotional and physical distress.

## PARTIES

9. Plaintiff Francis Austin resides in the State of Nebraska. At the time of the incidents in question, Plaintiff was a student at Fordham University and was over 18-years of age.

10. Defendant Fordham University is an educational institution principally located in Bronx County, New York State and is organized and authorized to do business under the laws of the State of New York. The events in question happened on Fordham's campus located in Bronx County, New York State.

## JURISDICTION AND VENUE

11. This action arises under New York common law.

12. The jurisdiction of this Court is predicated upon 28 U.S.C. §1332 because Plaintiff is a citizen of a different state than Defendant and because the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000) exclusive of interest and costs.

13. The acts complained of occurred entirely in the Southern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b)(2).

14. Venue is also lodged in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) because Fordham's principal place of business is in this judicial district.

15. This action is timely pursuant to New York State's Adult Survivors Act, New York CPLR 214-j.

## JURY DEMAND

16. Plaintiff demands a trial by jury.

## FACTS

Sweeney's Rape of Austin.

17. At the time of the rape, Austin and Sweeney were both second year students at Fordham and members of Fordham's NROTC program. Fordham assigned the two of them to live together their second year in B-10 of Finlay Hall a dormitory on Fordham's campus and under Fordham's custody and control. Austin had no choice in this assignment. Rather, the decision to house him with Sweeney was entirely Defendant's. Furthermore, Austin had no choice but to live in a Fordham dormitory as it was required by the program he was in.

18. For months prior to the rape, Sweeney repeatedly verbally and physically threatened Austin on an almost daily basis: He bragged to Austin about having raped other students and threatened to rape Austin. He constantly antagonized Austin, calling him "bitch boy" and "fag" and told Austin that he wanted to "fuck [his] hairy Jewish ass." He physically touched Mr. Austin in unwanted and inappropriate ways and masturbated onto Austin's futon. Sweeney also threatened Mr. Austin with Sweeney's NROTC issued Kbar as a weapon.

19. On January 16, 2011, upon returning to Fordham after winter break, Sweeney expressed disturbing sexual fantasies. Specifically, Sweeney said that he fantasized about being a

Nazi SS Officer at Auschwitz where Austin would be his favorite prisoner to rape in the concentration camp.

20. On February 11, 2011, Sweeney carried out his threats against Austin. At 1:00 a.m., Sweeney and Austin returned to their dorm room in Finlay Hall (Finlay B-10). Sweeney was heavily intoxicated. After they entered the room, Sweeney pulled a poster off the wall that Austin had hung up. Austin attempted to re-hang the poster, and, as he did so, realized that Sweeney was standing directly behind him. Austin attempted to turn around and ask Sweeney what he was doing but Sweeney – who was bigger and stronger – put his left arm against Austin's back on his shoulder blades and pushed Austin's body against the wall. Sweeney smashed the left side of Austin's head into the wall.

21. With Austin pinned against the wall, terrified, and unable to move, Sweeney pulled down Austin's pants. Still pinning Austin to the wall, Sweeney then pulled his own, now erect, penis out of his underwear, spit on his right hand and then forced his penis into Austin's anus, causing Austin agonizing pain. After approximately ten seconds, Sweeney pulled his penis out of Austin's anus, spit on his hand again, rubbed the spit onto his penis and then forced his entire penis into Austin's anus causing him excruciating pain. Sweeney then gyrated and moved his hips in a circular motion for a few moments and then pulled his penis out of Austin's anus, masturbated himself and ejaculated onto Austin's lower back and buttocks.

22. At this point Austin was able to escape Sweeney who soon thereafter collapsed into his (Sweeney's) bed and fell asleep. Austin left the room and went into the bathroom where he saw that he was bleeding from his rectum. The rape was so violent that Austin would bleed for three days thereafter and ultimately required surgery for his injuries.

<u>Fordham had Actual Notice, Including Written Notice, of the Danger Sweeney Posed to Austin</u>

23. Fordham's notice about the danger Sweeney posed to Mr. Austin dates back to 2009, over a year before Sweeney raped Mr. Austin. Beginning then, and continuing until just moments before the rape, Fordham received a continuous stream of written and verbal warnings that Sweeney was an imminent threat. Indeed, Sweeney repeatedly threatened to rape Mr. Austin in front of security guards. Further, Mr. Austin verbally and in writing raised these alarming issues with Fordham in his desperate attempt to get Fordham to provide him with safe housing, as it was required to do. Finally, NROTC officials raised the issue with Fordham and requested that Mr. Austin be given a new room assignment.

24. Fordham callously ignored all of these warnings; including those in writing; including those from NROTC officials.

25. Upon information and belief, in the fall of 2009, Sweeney physically assaulted his then present roommate during their freshman year at Fordham. As a result, Sweeney was moved out of his room in Hughes Hall and reassigned by Fordham to a new room in Lorillard Hall. By the end of Sweeney's freshman year, Fordham already knew that he posed a danger to whoever would be his next year's roommate.

26. Despite this knowledge, Defendant placed Sweeney in a dorm room with Austin, thus putting Austin in harm's way at the outset of Austin's sophomore year. Defendant did not offer Austin a choice in the matter as Austin was required to live in Fordham housing as part of the NROTC program and was required by Defendant to room with Sweeney in particular. Although Defendant knew it was placing Austin in harm's way, Defendant (as described below) took no steps to protect him – either from the first rape or from the second sexual assault.

27. Sweeney soon fixated upon Mr. Austin, repeatedly and violently threatening him both physically and sexually.

28. Sweeney was not quiet about these threats, and frequently made them in front of the dormitory security guard, known to students as Ms. Kelly.  Indeed, in front of Ms. Kelly, Sweeney loudly announced that, referring to Austin: "I'm going to slit your throat," "I'm going to rape you," "I'm going to rape you one day." At one point, again in front of Ms. Kelly, ominously asking Austin: "wanna get raped?" Finally, Austin told Ms. Kelly about an attack where Sweeney forced his finger into Austin's anus.

29. Ms. Kelly informed Austin many times that she perceived the threats to be real and was concerned about his safety.  She even told Austin that she had notified her supervisor – John Carrol, the head of Fordham's Campus Security – about these disturbing threats.

30. Ms. Kelly, a Fordham security guard, was placed in the dorm by Fordham to protect the safety of its students and her presence gave Austin reason to believe that he would be kept safe from Sweeney's threats.  However, while Ms. Kelly expressed concerns for Austin's safety, and reported it to her boss the head of security, Fordham failed to protect Austin and ensure his safety.  Indeed, despite notification to the head of Campus Security of these serious and dangerous threats, no action was taken to protect Austin.

31. Austin also reached out to other Fordham authorities to ask for help and protection, all to no avail.  For example, on December 1, 2010, Austin spoke to his Resident Advisor (RA), Steven Goncalves, and discussed being assigned a new roommate because of Sweeney's various threats.  Goncalves told Austin that he was aware of Sweeney's physical assaults and verbal abuse against Austin and the death threats that Sweeney was making against Mr. Austin and in fact had heard all of the above through the dorm walls.  They also

discussed the fact that Sweeney was sexually obsessed with Mr. Austin and had inappropriately touched him and threatened both him and his family.

32. Mr. Austin followed up this meeting with a December 11th written report to the RA, which, the RA informed Austin, he had forwarded on to the Fordham Residential Life Office. In that report Mr. Austin explained that he was scared because Sweeney bragged about raping other students & was threatening to rape him (Austin) and murder him. He went on to state that Sweeney had physically attacked him, touched his body in unwanted and inappropriate ways and used his NROTC issued kbar as a weapon against him. He further explained that Sweeney had stolen and ingested Mr. Austin's prescriptions, brought alcohol on campus and drunk it in their dorm room, used school internet to access disturbing pornographic materials, and had explosive temper tantrums. Austin detailed how Sweeney had used Austin's computer to go through his personal information, stalked him, prevented him from speaking on the phone in their room, referred to him using derogatory monikers such as a "mama's boy," "bitch boy" and "fag," Finally, Austin described how Sweeney had exposed himself from the window of their room when he was drunk, and urinated inside the room, masturbated onto Austin's Futon, defecated in the shower and smeared his feces on the mirror of their bathroom when he was drunk.

33. Again, despite written notice to the Residential Life Office of these specific and graphic threats, no action was taken to get Austin a new, and safe, dorm room.

34. Finally, on January 26, 2011 – just weeks before Sweeney raped Austin – Austin forwarded a letter by Luke Riddle, Assistant Professor of Naval Science at Fordham dated January 26, 2011, to Alexandra Petrello, Resident Director for Salice-Conley Hall Office of Residential Life. In that letter, Professor Riddle reported that NROTC had been

notified of (1) a physical altercation between Sweeney & Austin which NROTC determined was Sweeney's fault, thus putting Defendant on notice of a potential future assault -- whether physical or sexual -- since either required action; and (2) threats by Sweeney against Austin. NROTC requested that Fordham assign Austin a new room. The letter further noted that the obligation to impose disciplinary actions on Sweeney for his conduct rested with Fordham rather than the Navy. On January 27, 2011, Petrello confirmed that she had received the letter.

35. Yet again, while Fordham was put on notice, this time by an NROTC official, of the danger to Austin, no action was taken to get Austin a new, and safe, dorm room. Indeed, despite the NROTC's written reminder that Fordham was responsible for any discipline in the matter, Fordham failed to take any such discipline or to in any way respond to Sweeney's threats. Instead, this letter, like the letter to the RA and like the warnings forwarded on by the security officer went entirely ignored.

36. Despite these increasingly urgent warnings about the grave danger Sweeney posed to Austin, Fordham failed, again and again, to act and did not assign Austin a new roommate.

37. Finally, on the day of the rape itself, Fordham had one final chance to intervene and protect Austin and, once again, failed. As Austin and Sweeney were entering the dorm on the night Sweeney raped him, they passed the security guard protecting their dorm and Sweeney announced, in the security guard's hearing: "I'm going to rape you faggot." Again, this security guard did nothing to intervene and protect Austin. Soon thereafter it was too late – Sweeney finally made good on his repeated threats and raped Austin in their dorm room.

Austin Reported the Rape to Fordham Faculty but No Action Was Taken and a Second Assault occurred

38. On April 27, 2012, Austin reported the rape by Sweeney to Fordham Professor of Naval Science (PNS) Kerry Grubb. On May 8, 2012, he again reported the rape, this time to PNS Andrea Benvenuto. Despite Defendant now being on notice not only of the threat Sweeney posed, but of the actual rape that had occurred the prior year, Defendant *still* failed to take any action to discipline Sweeney or keep him away from Austin. Indeed, the reactions by Grubb and Benvenuto to the report of rape demonstrate that Defendant and its agents and employees were more concerned about protecting the reputation of Defendant and the NROTC program than about Austin's safety. To that end, Defendant and its agents and employees reacted angrily to Austin when he reported the rape and forcefully tried to prevent him from reporting the rape more broadly.

39. Beyond the wildly distressing fact that Fordham, informed that a rape had occurred on its campus, chose to shrug off the fact and not take immediate action, Fordham's inaction had further devasting consequences.

40. On May 18, 2012, Austin (who was running NROTC Commissioning that year) found himself alone in a room with Sweeney (who was also still in NROTC) in Keating Hall. Sweeney, upon seeing Austin, groped his buttock. When Austin turned around to tell Sweeney to stop, Sweeney stuck his hands down Austin's pants and grabbed his penis. When Austin again told him to stop, Sweeney replied, "what's up faggot" and pulled hard and painfully on Austin's scrotum.

41. This subsequent sexual assault by Sweeney on Austin, a year after the rape and after the rape had been reported to Fordham, was also completely preventable and would have been prevented by any competently and ethically run university system. Again, Fordham's

total reckless disregard of its obligations paved the way for this additional violent sexual assault to occur on its campus.

The Physical, Sexual and Psychological Harm to Austin

42. Austin has been physically, sexually, and emotionally devastated by Fordham's conduct, specifically: (1) Fordham's failure to prevent the foreseeable Rape by his Fordham assigned roommate in his Fordham dorm room, and; (2) Fordham's failure to act after Austin reported the rape to multiple Fordham authorities' and Sweeney's subsequent and preventable sexual assault on Austin.

43. Physically, Austin bled from his rectum for weeks following the rape. This problem did not abate. Instead, from 2011 to 2016 he continued to have painful anal bleeding during bowel movements as a result of the rape. This horrific injury occurred when Sweeney raped Austin and the tissue around his rectum was irrevocably torn and scarred and alarmingly re-opened many times, causing him excruciating pain. Finally, in 2016, Austin was forced to have surgery to correct this problem and to have the scar tissue removed.

44. Even this 2016 operation was only partially successful. As a gay man, Austin is unable, physically, to be the receiving partner in an intimate relationship without agonizing pain.

45. The psychological injury to Austin is, if anything, even more profound. A forensic psychologist who examined Austin found the following symptoms described below.

46. The rape and subsequent sexual assault and Fordham's failure to prevent them caused Austin to suffer from profound feelings of betrayal and severe and crippling Post Traumatic Stress Disorder ("PTSD"). Austin's PTSD ravages his life in the following ways: Austin has attempted to end his life on multiple occasions and still suffers from suicidal ideations; He has frequent and intrusive memories of the rape and subsequent

sexual assault, which are triggered by multiple stimuli and result in uncontrollable sweating and shaking; Austin suffers from disturbing nightmares related to the rape and subsequent sexual assault; Mr. Austin has ongoing difficulties maintaining relationships.

47. Additionally, the rape and subsequent sexual assault and Fordham's failure to prevent them caused Austin to suffer from severe Major Depressive Disorder. Austin's symptoms from this disorder include: Feelings of sadness, despair and emptiness most of the day, nearly every day; recurrent suicidal ideation and lethal suicide attempts; feelings of shame, worthlessness and inappropriate guilt; fatigue; psychomotor agitation.

48. Further, Austin has suffered from alcohol abuse and has used alcohol to self-medicate for years. This too was caused by the rape and sexual abuse assault and Fordham's failure to prevent them.

49. Finally, because of the rape and subsequent sexual assault and Fordham's failure to prevent them, Austin suffered from extreme weight loss, at one point weighing only 110 pounds, despite being over six feet tall, and was diagnosed with anorexia nervosa.

## TIMELINESS OF PLAINTIFF'S CLAIMS AND ALLEGATIONS REGARDING APPORTIONMENT

50. This action is timely because it falls within New York CPLR 214-j, New York State's Adult Survivors Act, and is brought within the revival period set forth in that section. The claims brought herein allege intentional, reckless or negligent acts or omissions for physical, psychological, and other injuries suffered as a result of conduct that would constitute sexual offenses as defined in Article 130 of the New York Penal Law, and such acts were committed against Plaintiff when Plaintiff was more than eighteen years of age.

51. Neither Sweeney's nor any other individuals' conduct should not be considered in determining the Defendant's liability.

52. Specifically, the Defendant is not entitled to protection under CPLR 1601 because of the exclusions set forth in CPLR 1602, including but not limited to CPLR 1602(2)(iv) and 1602(7).

53. Defendant had a non-delegable duty to Plaintiff and acted with reckless disregard for the safety of Plaintiff and others.

## FIRST CAUSE OF ACTION

### Negligence

54. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 53 as though fully set forth herein.

55. Defendant had a non-delegable duty to protect their students from known threats occurring on their campus and in their programs/activities. Here, Defendant failed to take any reasonable steps to ensure the safety of its students on campus and in its programs/activities, and Plaintiff in particular. Indeed, Defendant recklessly disregarded the dangers posed by Sweeney which, for the reasons noted above, were fully on display to Defendant.

56. Indeed, Fordham affirmatively put Austin in harm's way, placing him in a dorm with someone they knew to be violent and then insisting he stay in the dorm after further warnings of violence, threats of rape and multiple sexual assaults by Sweeney against Austin prior to the eventual rape. Fordham's affirmative actions in this regard further put Austin in a dangerous situation and they are liable for the harm that followed.

57. Defendant, by and through its agents, servants and/or employees, had actual knowledge, knew, or reasonably should have known of Sweeney's dangerous propensities and/or that

Sweeney was unfit to be a student on its campus or in its programs because of his repeated threats of physical and sexual violence.

58. It was reasonably foreseeable that if Defendant did not adequately exercise or provide the duty of care owed to its students, including but not limited to Plaintiff, these students would be vulnerable to physical and sexual violence from Sweeney.

59. Defendant breached the duty of care owed to Plaintiff by failing to protect him from foreseeable harm of physical and sexual assault by Sweeney. Indeed, Defendant affirmatively delivered Plaintiff to Sweeney by placing Plaintiff in Sweeney's dorm and refusing to move him after being informed of the dangers.

60. As a result of the above-described conduct, Plaintiff has suffered in the past, and will continue to suffer in the future, from severe mental anguish and emotional and physical distress.

## SECOND CAUSE OF ACTION

### Negligent Supervision of Property

61. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 60 as though fully set forth herein.

62. Austin was injured on Fordham's property and Fordham, like any landlord, has an obligation to maintain safe premises. In the context of college campuses, this duty of care includes protecting students from known threats by other students while on campus generally.

63. Here, Defendant had ample notice that Austin's dorm room was not safe – that in fact it was occupied by a sexual predator with unrestricted access to it – and yet Defendant continued to insist that Austin live in such an unsafe condition, which predictably resulted

in Austin suffering grave harm. Even written requests from NROTC staff that Defendant get Austin away from Sweeney went ignored. Further, Defendant's security guards (posted at the dorm to keep students safe) and supervisors failed to protect Austin even after hearing these threats firsthand.

64. Defendant owed a duty of care to Mr. Austin to keep his dorm room safe and breached that duty. It was reasonably foreseeable that if steps were not taken to prevent Sweeney from acting out on his sexual threats and earlier violence, that further violence including sexual violence would occur.

65. Moreover, Sweeney's assault on Austin in 2012 – after Mr. Austin had already reported the rape to Fordham staff and Fordham had done nothing about it – also occurred on Fordham property and also at time when Fordham knew of Sweeney's violent sexual propensities toward Mr. Austin, but nonetheless allowed him to remain on campus.

66. It was reasonably foreseeable that if Defendant did not adequately exercise or provide the duty of care owed to its students, including but not limited to Plaintiff, these students would be vulnerable to physical and sexual violence from Sweeney.

67. Defendant breached the duty of care owed to Plaintiff by failing to protect him from foreseeable harm of physical and sexual assault by Sweeney. Indeed, Defendant affirmatively delivered Plaintiff to Sweeney by placing Plaintiff in Sweeney's dorm and refusing to move him after being informed of the dangers.

68. As a result of the above-described conduct, Plaintiff has suffered in the past, and will continue to suffer in the future, from severe mental anguish and emotional and physical distress.

## THIRD CAUSE OF ACTION

### Negligent Failure to Maintain Safe Programs and Activities

69. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 68 as though fully set forth herein.

70. Defendant had a duty to maintain safe programs and activities – such as dormitory life and living – where Defendant encouraged students to participate in such activities and programs and where Defendant had taken affirmative steps to supervise and control the activity.

71. Here, there is no doubt that Defendant encouraged students to participate in dorm life; indeed, Defendant required Austin to live in a dorm and required that Sweeney be his roommate.

72. Moreover, Defendant supervised and controlled dorm life, prohibiting certain dangerous activities in dorms such as drinking and providing security guards to enforce safety rules. Having set up dormitory life as a program at Fordham, having insisted that Austin participate in the program, Defenant had an obligation to keep Austin safe in the dormitory program.

73. Defendant completely and utterly failed in this duty of care with horrific consequences. As noted repeatedly above, Defendant had ample notice (including written notice) that Sweeney posed a danger to those living with him in the dorm life program. Defendant breached its duty of care by ignoring these warnings and failing to keep this program and activity safe.

74. As a result of the above-described conduct, Plaintiff has suffered in the past, and will continue to suffer in the future, from severe mental anguish and emotional and physical distress.

## FOURTH CAUSE OF ACTION

### Negligent Failure to Provide Effective Security

75. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 as though fully set forth herein.

76. Defendant, by providing security guards in its dorms, clearly indicated that it was providing security to students in those dorms and therefore assumed a responsibility to provide that security effectively.

77. Specifically, here, Defendant conspicuously posted security guards in its dorms and Austin assumed they provided him with a degree of safety from Sweeney. However, while the guards, and their supervisor, were well aware of the threats to Austin, Defendant repeatedly failed to act on this information.

78. Defendant was on notice that Sweeney posed a threat to Austin and that security guards, posted for Austin's safety were not protecting him. Fordham therefore breached its duty of care to provide effective security by not acting on the threats witnessed by the security guards.

79. As a result of the above-described conduct, Plaintiff has suffered in the past, and will continue to suffer in the future, from severe mental anguish and emotional and physical distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

A. Awarding compensatory damages for all physical injuries, and the resulting emotional distress, psychological harm, anxiety, humiliation, physical pain and suffering, family and social disruption, and other harm, in an amount to be determined at trial but in excess of $75,000;

B. Awarding punitive damages in an amount to be determined at trial;

C. Awarding pre- and post-judgment interest on all such damages;

D. Awarding such other and further relief as this Court may deem just and proper.

DATED:   New York, New York
         June 6, 2023

PETERS BROVNER LLP

By: _____
Lesley Brovner
Mark Peters
139 Fulton Street – Suite 132
New York, New York 10038
917-639-3270
lbrovner@petersbrovner.com
mpeters@petersbrovner.com