UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FRANCIS AUSTIN,

                      Plaintiff,

       - against -                                 23 Civ. 4696 (PAC) (GS)

FORDHAM UNIVERSITY,                             OPINION & ORDER

                      Defendant.

------------------------------------------------------------------;
FORDHAM UNIVERSITY,

                      Third-Party Plaintiff,

       - against -

PATRICK SWEENEY,

                      Third-Party Defendant.
------------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

Two discovery disputes are before the Court for resolution. First, Plaintiff Francis Austin ("Austin" or "Plaintiff") seeks approval of a confidentiality order that would require Third-Party Defendant Patrick Sweeney ("Sweeney" or "Third-Party Defendant") to abide by an "attorneys' eyes only" provision for certain of Plaintiff's medical records. Second, Sweeney seeks to compel the disclosure of phone numbers and addresses for certain witnesses identified by Austin.

For the reasons set forth below, Plaintiff's motion is **GRANTED** in part and **DENIED** in part, and Third-Party Defendant's Motion is **GRANTED**.

## BACKGROUND

### A. Plaintiff's Allegations

Austin brings this diversity action against Defendant Fordham University ("Fordham") asserting four claims sounding in negligence and one claim under New York City's Victims of Gender-Motivated Violence Protection Act ("GMV Act"). (Dkt. No. 28 ("Amended Complaint" or "Am. Compl.") ¶¶ 54-83). These claims arise from Austin's allegations that Sweeney violently raped and sexually assaulted Austin in separate incidents in February 2011 and May 2012 when they were both undergraduate students at Fordham and members of the school's Naval Reserve Officers Training Corps ("NROTC") program. (*Id.* ¶¶ 1, 17, 20-22, 40).

According to the Amended Complaint, Fordham was supposedly aware, prior to the alleged rape, that Sweeney had repeatedly threatened sexual and physical violence against Austin and had previously assaulted another student, yet Fordham failed to take any action to protect Austin from the danger posed by Sweeney. (*Id.* ¶¶ 23-37). Austin also alleges that he reported the rape to two Fordham professors in early 2012, prior to Sweeney's May 2012 sexual assault, and that Fordham again failed to take any action to protect him. (*Id.* ¶¶ 38-41).

Austin alleges he has suffered a myriad of physical, sexual, and psychological injuries due to the rape and sexual assault by Sweeney and Fordham's failure to prevent these acts. Austin claims he bled for weeks after the 2011 rape and continued to experience painful bleeding for years afterwards, which ultimately required surgery. (*Id.* ¶¶ 22, 43). Even after the operation, Austin alleges, he

remains unable to have sexual relations without pain. (*Id.* ¶ 44). Austin's emotional and psychological injuries allegedly include Post-Traumatic Stress Disorder ("PTSD"), which manifests itself in, *inter alia*, disturbing nightmares and difficulties maintaining relationships; Major Depressive Disorder, with symptoms such as suicidal ideation and suicide attempts and feelings of despair, emptiness, and shame; alcohol abuse; and anorexia nervosa resulting in extreme weight loss. (*Id.* ¶¶ 45-49).

### B. Procedural History

Plaintiff initiated the instant action on June 6, 2023 pursuant to New York's Adult Survivors Act, N.Y. CPLR § 214-j. (Dkt. No. 5 ¶ 50 (original complaint); *see* Am. Compl. ¶ 50). The Adult Survivors Act, enacted in 2022, temporarily revived the ability to bring certain civil claims for sexual assault without regard for the otherwise applicable statute of limitations. *See Carroll v. Trump*, 650 F. Supp. 3d 213, 216, 218 (S.D.N.Y. 2023).

Fordham answered the complaint, substantively denying its allegations. (Dkt. No. 13). Fordham also asserted a series of affirmative defenses, including that "any negligence that allegedly caused an injury to Plaintiff was wholly done by some third-party not related in any matter to [Fordham]." (*Id.* ¶ 82). A few weeks later, Fordham filed a Third-Party Complaint against Sweeney, asserting claims for contractual and common law indemnification as well as contribution. (Dkt. No. 15 ("Third-Party Complaint") ¶¶ 17-25). Subsequently, on November 2, 2023, Austin amended his complaint by adding a fifth cause of action under the GMV Act. (*See*

Am. Compl. ¶¶ 80-83). Fordham also denied the substantive allegations of the Amended Complaint and Sweeney has denied the substantive allegations of Fordham's Third-Party Complaint. (Dkt. Nos. 25, 30).

All parties have attended an initial pretrial conference and a subsequent status conference before Judge Crotty. (*See* Minute Entry dated September 19, 2023; Minute Entry dated December 11, 2023). Under the current case management plan, the deadline for completion of fact discovery is April 19, 2024. (Dkt. No. 32).

### C. The Discovery Disputes

On January 24, 2024, Austin submitted a letter setting forth a disagreement among the parties regarding a proposed confidentiality order with respect to Plaintiff's medical records. (Dkt. No. 33). The parties do not dispute that these records are discoverable, or that they should be protected by a confidentiality order. Instead, the parties disagree as to whether Sweeney should be allowed to personally view these records or whether, instead, they should be designated "attorney's eyes only" ("AEO") and subject to review only by Sweeney's counsel. (*Id.* at 2).

According to Plaintiff, such a limitation is warranted because of Sweeney's alleged abuse of Plaintiff, including his "prior misuse" of Plaintiff's medical records. (*Id.*). Specifically, Austin claims that Sweeney "had possession of Plaintiffs NROTC medical records in his role at NROTC but then improperly retained those records, reviewed them and used them to threaten Plaintiff, telling Plaintiff, falsely, that he was not fit to be part of NROTC." (*Id.*). Austin also argues that any interest

Sweeney may have in viewing these records personally is diminished because Austin "did not bring Sweeney into this Court" and only sued Fordham. (*Id.*). Accordingly, Austin contends that he should be allowed to designate his medical records, which include psychological records, as AEO per the terms of a proposed confidentiality order attached to Plaintiff's letter. (*Id.*).

Sweeney counters that any AEO designation would "unfairly apply only to [him]," and, more importantly, would handicap his ability to defend himself in this action because he "is, quite literally, the only individual capable of identifying falsehoods, inconsistencies and outright errors in Austin's account of [his and Plaintiff's] interactions." (Dkt. No. 34 at 1-2). Sweeney "vehemently" denies past misuse of Plaintiff's medical records, and in any event, contends that any concern that he might misuse records produced in this action is "mooted by an appropriate Confidentiality Agreement, without an AEO designation." (*Id.* at 3).

For its part, Fordham objects that Plaintiff's confidentiality order, as drafted, "would grant Plaintiff the unfettered right to mark documents '[AEO].'" (Dkt. No. 35 at 1). Furthermore, Fordham contends that even though Plaintiff indicates that the AEO designation would be used on "sensitive medical documents" and would apply only to Sweeney, the proposed confidentiality order does not make this clear, nor does it make clear that Fordham would be allowed to use documents marked as AEO at future depositions, including Sweeney's deposition, or at trial. (*Id.*).

In his letter opposing Austin's AEO request, Sweeney raised as a separate discovery dispute the alleged inadequacy of Plaintiff's interrogatory responses

5

relating to the identification of Plaintiff's witnesses. (Dkt. No. 34 at 3). After the Court instructed them to meet and confer (Dkt. No. 37), the parties reported that they had narrowed the dispute to a single issue: the use of Plaintiff's law firm as contact information for five witnesses, all of whom are Plaintiff's family members. (Dkt. No. 39). Sweeney contends that Plaintiff's refusal to provide the witnesses' personal phone numbers and addresses runs afoul of Fed. R. Civ. P. 26(a)(1)(A)(i) and Local Civ. R. 26.3(c)(3). (*Id.* at 2-3; Dkt. No. 34 at 3).[1]

The Court heard oral argument (via videoconference) on February 15, 2024. During the argument, Sweeney's counsel emphasized the importance of being able to share and discuss with his client any information in the medical records reflecting Austin's recollection or narrative of the events at issue in the lawsuit, including the alleged rape and sexual assault. (Dkt. No. 43-1 ("Oral Arg. Tr.") at 16:8-17:18). In response, Plaintiff's counsel modified, or at least clarified, his AEO proposal by stating that he would *not* designate such information as AEO. (*Id.* at 26:11-27:18).

Instead, Plaintiff's counsel seeks to designate as AEO only those medical records (and portions of medical records) containing information about Austin's alleged injuries, psychological condition, and other damages-related materials. (*Id.* at 6:16-7:6; 8:19-9:4). Counsel further noted that, since Sweeney's counsel will be seeing these materials, he can ask the Court to remove any AEO designation if he believes Sweeney should be able to view the materials in question. (*Id.* at 26:24-

---

[1] Fordham has not taken a position on the dispute relating to Plaintiff's interrogatory responses.

6

27:4). Sweeney's counsel continues to object to Austin's AEO proposal, arguing that there is no basis to eliminate Sweeney's access to any of the medical records. (*Id.* at 13:25-14:9; 15:16-15:21; 17:2-18:17).

During the argument, Austin's counsel allayed Fordham's concerns about the potential AEO designations by representing that (1) any such designations would apply only to Sweeney, not Fordham; and (2) Fordham would be free to show any AEO-designated documents to witnesses during depositions (including Sweeney's deposition) and at trial. (*Id.* at 32:5-33:5).

## LEGAL STANDARDS

### A. Protective Orders

Under Fed. R. Civ. P. 26(c), "[a] party or any person from whom discovery is sought may move for a protective order," which the Court may issue, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such a protective order may, *inter alia*, "forbid[] the disclosure or discovery," "specify[] terms . . . for the disclosure or discovery," or "limit[] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (B), (D). District courts have "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

"The party seeking a protective order has the burden of showing that good cause exists for issuance of that order." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004) (cleaned up). Accordingly, when a party seeks a limitation

in a protective order designating certain documents as "attorneys' eyes only," it is that party's burden to establish good cause for the AEO designation. *See, e.g.*, *Paul Rudolph Found., Inc. v. Paul Rudolph Heritage Found.*, No. 20 Civ. 8180 (CM) (SLC), 2023 WL 1515773, at *2 (S.D.N.Y. Feb. 3, 2023); *Deffaa v. Pivotel Am., Inc.*, No. 20 Civ. 5466 (ER), 2021 WL 4124301, at *1 (S.D.N.Y. Sept. 9, 2021); *Diaz v. Local 338 of Retail, Wholesale Dep't Store Union*, No. 13 Civ. 7187 (SJF) (SIL), 2014 WL 4384712, at *3 (E.D.N.Y. Sept. 3, 2014).

"Good cause is established by 'demonstrating a particular need for protection.'" *Flores v. Stanford*, 18 Civ. 2468 (VB) (JCM), 2021 WL 4441614, at *4 (S.D.N.Y. Sept. 28, 2021) (quoting *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. 2010)). "Ordinarily, good cause exists when a party shows that disclosure will result in a clearly defined, specific and serious injury." *Id.* (cleaned up). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Duling*, 266 F.R.D. at 71 (citation omitted). Although the burden is on the movant to establish good cause, "the court ultimately weighs the interests of both sides in fashioning an order." *Flores*, 2021 WL 4441614, at *4 (quoting *Duling*, 266 F.R.D. at 71).

### B.  Identification of Witnesses

Under Fed. R. Civ. P. 26(a)(1)(A)(i), a party must provide to all other parties in the litigation "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that

information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."

In this District, when a discovery request uses the word "identify" with respect to a person, this "means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment." Local Civ. R. 26.3(c)(3).

## DISCUSSION

### A. Plaintiff Is Permitted to Designate a Subset of His Medical Records as AEO

The Court first addresses Plaintiff's argument that the proposed confidentiality order should give him the right to designate certain of his medical records (or portions thereof) as AEO.

Plaintiff's argument that Sweeney's alleged "prior misuse" of Austin's medical records justifies an AEO provision is unpersuasive. Sweeney denies misusing Plaintiff's medical records and there is no independent proof of such misuse. Any alleged misuse took place approximately 13 years ago, when Sweeney and Austin were in between their freshmen and sophomore years in college. (Oral Arg. Tr. at 10:10-13:21); *see also Austin v. Fordham Univ.*, No. 21 Civ. 6421 (JPO), 2022 WL 4626485, at *2 (S.D.N.Y. Sept. 30, 2022). As Austin's counsel acknowledged at oral argument, Austin does not allege that Sweeney improperly *disclosed* Austin's medical records or medical information to any third party. (*Id.* at 13:10-13:16).

Perhaps most important, any of Austin's medical records to which Sweeney would be given access during discovery in this case would be protected by the terms of a confidentiality order to be entered by the Court. Before receiving records produced pursuant to that confidentiality order, Sweeney would be required to sign a Non-Disclosure Agreement in which he would agree, *inter alia*, to not disclose the records to any third party, to use them solely for purposes of this litigation, and to return or destroy them at the conclusion of the litigation. If Sweeney violated the order, he would be subject to contempt sanctions.[2]

Under these circumstances, Austin has not met his burden of demonstrating a "particular need for protection," *Flores*, 2021 WL 4441614, at *4, against the risk that Sweeney might improperly disclose or misuse Austin's medical records. *See, e.g.*, *Deffaa*, 2021 WL 4124301, at *2 (denying motion to designate certain records as AEO: "While the Court recognizes that Pivotel has accused Deffaa of dishonest behavior in the past, this conduct is disputed . . . On balance, the Court finds that, given that Deffaa has been warned about the importance of abiding by the protective order, Pivotel has not met its burden of showing a substantial risk of harm that would result from disclosure to her."); *Diaz*, 2014 WL 4384712, at *4 (finding movant did not demonstrate "a 'particular need' for an 'attorney's eyes only' limitation" on disclosure of personnel files where files would be subject to

---

[2] These representations are set forth in the Non-Disclosure Agreement attached to my Model Stipulation and Protective Order, available at https://nysd.uscourts.gov/hon-gary-stein. The representations in the confidentiality agreement attached to Plaintiff's proposed confidentiality order are more limited. (Dkt. No. 33-1 at 5). At oral argument, I indicated that I would require Sweeney (and other recipients of confidential information produced during discovery) to execute my form Non-Disclosure Agreement instead.

10

confidentiality order); *HSqd, LLC v. Morinville*, Civ. No. 3:11CV1225 (WWE), 2013 WL 1149944, at *3 (D. Conn. Mar. 19, 2013) (finding that "defendant has failed to meet the good cause standard to justify" AEO designation and stating that "[the court] trusts that the parties will abide by" provisions of a protective order).

Austin's argument that he did not sue Sweeney in this action is equally unavailing. Austin's Amended Complaint accuses Sweeney of criminal acts of sexual assault and seeks to hold Fordham liable for those acts. As Sweeney notes, it was certainly foreseeable to Austin that Fordham would bring Sweeney into this action. (Dkt. No. 34 at 2). Now that Sweeney has been joined as a party, he is entitled to the same discovery rights as any other party, absent a proper justification for curtailing those rights. *See* ABA Section of Litigation, *Business and Commercial Litigation in Federal Courts* § 10.19 (5th ed. Nov. 2022 update) ("In general, a third-party defendant has the same right to discovery as any other party."). The fact that Austin did not sue Sweeney directly is not, in and of itself, a justification for curtailing Sweeney's discovery rights.

Austin, however, makes an additional argument that merits more extended analysis. He claims that "the provision of sensitive medical records to a victim's alleged rapist"—in particular, the victim's psychological records—could cause the alleged victim to experience additional trauma. (Dkt. No. 33 at 3; Oral Arg. Tr. at 10:3-10:6; 25:23-26:10). As an example, Austin's counsel explained at oral argument that Austin's medical records will include instances in which Austin discusses his relationship with his current partner, which Austin does not wish

11

Sweeney to see. (Oral Arg. Tr. at 28:4-28:9). In this regard, the harm Austin seeks to avert through AEO designations stems not from a potential improper disclosure or use of his medical records by Sweeney, but from the very fact that Sweeney would be privy to the information set forth in the records.

Austin clearly has a "legitimate privacy interest in his personal medical information." *Doe v. Hirect One, Inc.*, No. 22 Civ. 6417 (RA), 2022 WL 3903597, at *2 (S.D.N.Y. Aug. 30, 2022). His interest is especially acute since the medical information in question doubtless contains intimate details of Austin's sexual, psychological, and emotional life. It is understandable that Austin would not want those records to be viewed by Sweeney given the nature of the allegations in this case. As Austin notes, it is not uncommon for courts in this Circuit to "allow or order a party's sensitive medical records and information to be designated AEO" (Dkt. No. 33 at 2), although the cases he cites involve significantly different factual circumstances and instances where the party receiving the medical records apparently did not object to the AEO designation.[3]

On the other hand, "every litigant has a powerful interest in being able to retain and consult freely with an attorney" and "to participate in the process

---

[3] *See United States v. Marte*, No. 16 Cr. 740 (GHW), 2021 WL 1164774, at *1 (S.D.N.Y. Mar. 25, 2021) (protective order in bank fraud and mail theft prosecution included AEO provision for alleged victims' medical issues); *Castrillon v. Ben-Amun Co.*, No. 19 Civ. 9228 (RA) (OTW), 2020 WL 1067481, at *1 (S.D.N.Y. Mar. 5, 2020) (protective order in copyright infringement case allowed AEO for plaintiff's personal health and medical information); *Doe v. Delta Airlines, Inc.*, No. 13 Civ. 6287 (PAE), 2015 WL 798031, at *2 (S.D.N.Y. Feb. 25, 2015) (plaintiff who brought false arrest claim against airline based on altercation at airport allowed to produce medical records on AEO basis); *Kiczuk v. United States*, No. 3:21-CV-707 (KAD), 2022 WL 100158, at *5 (D. Conn. Jan. 11, 2022) (directing medical records relevant to plaintiff's claim for refunds of federal tax payments to be designated as AEO).

whereby justice is done," rather than "passively . . . await[ing]" the outcome of the proceeding. *Doe v. District of Columbia*, 697 F.2d 1115, 1119-20 (D.C. Cir. 1983). Consequently, courts should be "chary of issuing protective orders that restrict the ability of counsel and client to consult with one another during trial or during the preparation therefor." *Id.* at 1119; *see also Lucas v. Gold Standard Baking, Inc.*, No. 13 Civ. 1524, 2017 WL 1436864, at *3 (N.D. Ill. Apr. 24, 2017) ("[c]ourts have recognized the hobbling effect that an opponent may experience in litigation when a party restricts who may view certain information," including being left "in a difficult position to assess whether the arguments put forward on its behalf are meritorious") (cleaned up).

Here, Sweeney has a legitimate interest in being able to consult freely with his counsel about the information in Austin's medical records. That interest goes beyond statements in the records concerning events about which Sweeney may have personal knowledge, and extends even to information that bears only on issues of damages. After all, it is Sweeney who may ultimately have to pay any damages, should Austin prevail on his claims against Fordham and Fordham prevail on its third-party claims against Sweeney.

Balancing the parties' competing interests, and bearing in mind that it is Austin's burden to establish good cause, the Court finds that an AEO designation is justified in this case only for a limited subset of Austin's medical records: those pertaining to his relationships with intimate partners. As suggested by Austin's counsel, these are the records that are most sensitive and most likely to cause harm

13

to Austin if he knows that Sweeney is able to review them. (Oral Arg. Tr. 27:19-29:24). Austin has established a "particular need for protection" with respect to these records and the prospect of a "clearly defined, specific and serious injury," *Flores*, 2021 WL 4441614, at *4, should they be disclosed to Sweeney.

The Court finds that Austin has not made a sufficient showing of good cause with respect to his other medical records, such as those pertaining to his surgery, PTSD and depression, alcohol abuse, and anorexia. Although Austin claimed at oral argument that he would be harmed if Sweeney were allowed to see any of his psychological records, he has not submitted any factual support or legal authority to substantiate that claim. With respect to these other records, Austin has articulated only (and solely through his counsel) "[b]road allegations of harm," which "do not satisfy the Rule 26(c) test." *Duling*, 266 F.R.D. at 71 (citation omitted). AEO designation of these records, which relate to conditions that are explicitly described in the Amended Complaint and for which Austin seeks recompense, is therefore unwarranted. *See Henne v. Great River Reg'l Library*, No. 19 Civ. 2758 (WMW/LIB), 2021 WL 6804560, at *5 (D. Minn. Jan. 4, 2021) (rejecting plaintiff's request for AEO designation of employment and medical records where "Plaintiff has placed her medical condition in controversy . . . [and] has not indicated with any specificity how she would be harmed if [the proposed protective order] were to be adopted without an 'attorneys' eyes only' provision").

Thus, Plaintiff may designate as AEO only those records (and portions of records) pertaining to his relationships with other intimate partners. Further, as

noted above, even as to those records Plaintiff has agreed that he will not designate as AEO information reflecting any recollection or narrative of the underlying events giving rise to Plaintiff's claims. The parties shall prepare and submit for the Court's review a revised confidentiality order effectuating this ruling, which shall also include a Non-Disclosure Agreement in the form attached to the Model Stipulation and Protective Order available at https://www.nysd.uscourts.gov/hon-gary-stein. (*See* note 2, *supra*).

### B. Plaintiff Must Disclose Addresses for His Witnesses

Sweeney originally raised his objection to Austin's failure to provide identifying information in the context of Austin's responses to interrogatories propounded by Sweeney. (Dkt. No. 34 at 3). In the subsequent letter following the parties' meet-and-confer, Sweeney objected to Austin's failure to provide information in Austin's supplemental disclosures under Fed. R. Civ. P. 26(a)(1)(A)(i). (Dkt. No. 39 at 1). Whether analyzed as a supplemental disclosure under Rule 26(a)(1)(A)(i) or as an interrogatory response, the Court agrees that in identifying his witnesses, Austin cannot simply use his counsel's law firm address as contact information.

At least one court in this District has found that listing a law firm's address for purposes of disclosing multiple witnesses is insufficient to satisfy Rule 26(a)(1)(A)(i), which requires disclosure of the witness' "name and, if known," and his or her "address and telephone number." *See Pal v. N.Y. Univ.*, No. 06 Civ. 5892 (PAC) (FM), 2008 WL 2627614, at *4 n.2 (S.D.N.Y. June 30, 2008) (finding

15

defendants had not met their Rule 26 disclosure obligations where "the address and telephone number set forth for each witness in the supplemental disclosure is that of [Defendant's law firm].  Rule 26(a) requires the disclosure of the 'address and telephone number' of each disclosed witness.  I presume that none of the witnesses in fact resides at the office of [Defendant's] law firm.").  Although Plaintiff claims it is routine to use counsel's contact information when disclosing witnesses represented by counsel (Oral Arg. Tr. at 37:11-38:2), he cites no authority holding that this is sufficient to comply with Rule 26(a)(1)(A)(i) and provides no reason why the Court should disregard the plain language of the rule.

Analyzing the issue in the context of Plaintiff's interrogatory responses yields the same conclusion.  Sweeney's interrogatories asked Austin to "identify" persons believed to have knowledge or information concerning the subject matter of this action, and incorporated the Uniform Definitions in Discovery Requests set forth in Local Civil Rule 26.3.[4]  Under Local Civil Rule 26.3(c)(3), the term "identify" in a discovery request, when referring to a person, means providing, to the extent known, the person's full name and "present or last known address."  Yet Austin's interrogatory responses identified the five family members in question by name only, without providing any address information for them.

Austin argues that Local Civil Rule 26.3(c)(3) is somehow superseded by Local Civil Rule 33.3(a), which restricts the use of interrogatories in this District to those "seeking names of witnesses with knowledge of information relevant to the

---

[4] At the Court's request, Sweeney's counsel provided the Court via email with copies of his interrogatories, dated Oct. 18, 2023, and Austin's responses, dated December 4, 2023.

subject matter of the action" and certain other subjects.  (Oral Arg. Tr. at 39:12-41:6).  The Court disagrees.  Local Civil Rule 33.3(a) limits the scope of interrogatories to certain subjects, including identification of witnesses.  It does not purport to say *how* witnesses should be identified.  Local Civil Rule 26.3(c)(3) supplies the answer to that question, and requires identification of the person's name as well as his or her present or last known address.

Thus, Plaintiff shall promptly identify the present or last known addresses of each of these potential witnesses and disclose them to both Sweeney and Fordham within three business days of this Order.[5]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a confidentiality order containing an AEO provision is **GRANTED** in part and **DENIED** in part and Third-Party Defendant's motion to compel the disclosure of Plaintiff's witnesses' present or last known addresses is **GRANTED**.

DATED:   New York, New York
         February 23, 2024

_____
GARY STEIN
United States Magistrate Judge

---

[5] The Court does not require Plaintiff to provide telephone numbers for the witnesses in question.  Although Fed. R. Civ. P. 26(a)(1)(A) directs that the witness's phone number be provided, Local Civil Rule 26.3(c)(3) does not.  Since Sweeney initiated this discovery dispute on the basis of Plaintiff's interrogatory responses, the Court views Local Civil Rule 26.3(c)(3) as governing this dispute.